McLaughlin v Arch Ins. Co. (2019 NY Slip Op 00679)





McLaughlin v Arch Ins. Co.


2019 NY Slip Op 00679


Decided on January 31, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 31, 2019

Richter, J.P., Manzanet-Daniels, Tom, Kahn, Singh, JJ.


8274 161034/13

[*1]Michael McLaughlin, et al., Plaintiffs-Respondents-Appellants,
v
Arch Insurance Company, et al., Defendants-Appellants-Respondents.


Goldberg Segalla, Buffalo (Jonathan Schapp of counsel), for appellants-respondents.
Daniel J. Hansen, New York, for respondents-appellants.



Order, Supreme Court, New York County (Melissa A. Crane, J.), entered July 12, 2018, which denied the parties' motions for summary judgment, inter alia, declaring their respective rights and obligations under the insurance policy issued by defendants to nonparty J. Petrocelli Contracting, Inc. (Petrocelli), with respect to the underlying personal injury action, unanimously affirmed, without costs.
Plaintiffs were awarded a judgment in 2012 in the underlying personal injury action against Sterling Mets, L.P., after a trial and pursuant to a settlement agreement in which Sterling agreed to partially satisfy the judgment and to assign plaintiffs its rights against the instant defendants.
The motion court correctly declined to interpret the "Press Gate & Mailroom Contract" between Sterling affiliate Mets Development Company (MDC) and contractor Petrocelli as a "Master Agreement" whose terms and conditions, including Petrocelli's obligation to procure additional insurance coverage on Sterling's behalf, applied to the "Weight Room" project on which plaintiff Michael McLaughlin was working when he was injured. The unambiguous Press Gate & Mailroom Contract does not support the characterization; indeed, it does not suggest that it is anything but a limited vendor acknowledgment agreement on the particular project of the press gate and mailroom renovations (see Centro Empresarial Cempresa S.A. v America Movil, S.A.B. de C.V., 17 NY3d 269, 277 [2011]). The contract states that the project is "in connection with ongoing renovations in and around Shea Stadium as further described below" (emphasis added), and identifies the precise project to which the contract applies.
Moreover, by its express terms, the Press Gate & Mailroom Contract could not be amended other than by a writing signed by Petrocelli and MDC; the court's interpretation of the contract correctly acknowledges this provision, rather than reading it out of the contract (see Kolmar Ams., Inc. v Bioversel Inc., 89 AD3d 493 [1st Dept 2011]). Contrary to plaintiffs' contention, Section II of Exhibit B of the contract does not override this provision; it provides an exception for the Scope of Work as specifically defined in Exhibit B, Section I, to which MDC reserved the right to unilaterally make additions or deletions. The Weight Room project proposal documents are signed solely by Petrocelli, and accordingly do not fall within this exception. Plaintiffs' reliance on General Obligations Law § 15-301 is also misplaced, as there is no support in the record for a finding that the Weight Room project was meant to be a change or modification to the Press Gate & Mailroom project, rather than an altogether new and separate project.
However, the court correctly found an issue of fact as to whether Petrocelli and Sterling entered into an oral agreement to proceed with the Weight Room project on the same terms and conditions as the Press Gate & Mailroom Contract, i.e., inter alia, obligating Petrocelli to procure additional insurance coverage for Sterling under the policy issued to it by defendants (see Kramer v Greene, 142 AD3d 438, 440 [1st Dept 2016]). Petrocelli neither recalled nor denied that such an agreement was made, and MDC's vice president submitted two sworn affidavits [*2]attesting to such an agreement and testified at deposition that the Press Gate & Mailroom Contract was "the platform" for future projects with Petrocelli. We agree with the motion court that MDC's affidavits and the deposition testimony are not contradictory.
An issue of fact also exists as to whether plaintiff's injuries "arose out of" the Weight Room project.
Contrary to plaintiffs' contention, the issue whether defendants were obligated to defend Sterling in the underlying action must await a determination of whether Sterling was an additional insured under the policy in connection with the Weight Room project.
We have considered the parties' remaining arguments for affirmative relief and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JANUARY 31, 2019
DEPUTY CLERK